In re the MARRIAGE OF Janet Lee POBST and Norman Michael Pobst, Jr.

Janet Lee POBST, Petitioner–Appellant,

v.

Norman Michael POBST, Jr., Respondent–Respondent.

No. 21509.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 28, 1997.

Motion for Rehearing or Transfer Denied Nov. 14, 1997.

Phillip J. Barkett, Jr., Dempster, Barkett & Edwards, Sikeston, for Petitioner–Appellant.

Thomas A. Ludwig, Beeson, Ludwig, Wilson & Jackson, Jackson, for Respondent–Respondent.

SHRUM, Judge.

Janet Lee Pobst (Mother) appeals a judgment modifying the custody provisions of the decree dissolving her marriage to Michael Norman Pobst (Father). The trial court's modification set a schedule of custody in which, *inter alia*, Mother and Father would alternate physical custody every two weeks. We affirm the trial court's judgment.

## FACTS

Mother and Father were married on October 17, 1986, in Benton, Missouri. Two children were born of this marriage—Lacie Pobst and Dylan Pobst. The marriage was dissolved on January 9, 1995. It appears the dissolution decree granted Mother sole legal custody and granted Mother and Father joint physical custody of both children.[1] The dissolution decree stated that the reason Mother was granted physical custody of the children was because Lacie feared that Mother would leave her and no longer be her mother which prompted Lacie to want to run away. The court determined that Lacie and Dylan should not be separated.

On January 31, 1996, Father filed a motion to modify both legal and physical custody provisions of the decree. Mother filed an answer and counterclaim for affirmative relief. The trial court heard evidence on the matter on June 17 and 19, 1996. Father proposed calling Lacie to testify. The trial court in its discretion interviewed Lacie utilizing questions submitted by both attorneys. Father also testified and he elicited testimony from his father, his brother, and a friend

---

1. While the decree does not use the term "joint physical custody," the decree grants Father significant periods of time in which the children reside with him. Thus we will characterize the decree's custody provision as joint physical custody. *See Nix v. Nix,* 862 S.W.2d 948, 951 (Mo. App.1993).

from work. Mother testified and elicited testimony from her sister, her mother, and her fiance.

Father filed an amended motion on September 20, 1996, and Mother filed a counterclaim for affirmative relief on October 1, 1996. Evidence on the amended motion and counterclaim was heard on October 10, 1996. This evidence consisted of testimony by father, his girlfriend, and a nurse from Southeast Hospital. Mother and her mother testified.

In its judgment of modification, the trial court modified the children's custody arrangement. The judgment specifically stated that the trial court, at the time of dissolution, had concern about Lacie's separation from Mother. The court went on to find that since the dissolution Lacie experienced no problems while in Father's custody and expressed satisfaction with both Mother and Father. Once again, the trial court determined that Lacie and Dylan should not be separated. As we read it, the judgment of modification granted Mother and Father joint legal custody of Lacie and Dylan, and granted Mother and Father periods of physical custody alternating every two weeks. This appeal followed.

## STANDARD OF REVIEW

■■■ We will affirm a trial court's judgment modifying custody unless the judgment: (1) is unsupported by substantial evidence; (2) is against the weight of the evidence; or, (3) erroneously applies the law. *Wilson v. Sullivan,* 922 S.W.2d 835, 837[1] (Mo.App. 1996); *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo.banc 1976). We accord a trial court's judgment greater deference in custody decisions than in other cases. *Breckner v. Coble,* 921 S.W.2d 624, 626[3] (Mo.App.1996). We will not overturn the trial court's judgment unless the appellant can demonstrate that it is not in the best interests of the children. *Larkins v. Larkins,* 921 S.W.2d 152, 153[3] (Mo.App.1996).

**2.** We note that neither Mother nor Father appealed the trial court's judgment in the dissolu-

## DISCUSSION AND DECISION

■■ Mother's sole point relied on charges the trial court erred in modifying the children's custody arrangement because Father did not prove, and the trial court did not recite in its judgment a substantial and continuing change in circumstances. We disagree. A trial court may modify a custody decree if:

"[I]t finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

§ 452.410, RSMo 1994.

The following passage appears in the dissolution decree:

"This Court can have great impact on the actions of [Mother] and [Father] by specific orders. The Court has far less control over the mental health and well being of minor children, that being controlled by the actions of the parents. There is testimony by [Mother] that the minor child, Lacie, fears that [Mother] will leave her and no longer be her mother prompting the child to just want to run away. It is for this reason that the Court finds the [Mother] to be the proper person to have the primary care and custody of the minor children." [2]

In the judgment of modification, the trial court states the following:

"That the court originally had some concern about the minor child, Lacie Pobst's, separation from her mother, but the court finds that the minor child, Lacie Pobst, is experiencing no problems being in her father's custody and expresses satisfaction with both parents."

Father argues that the court's finding in the judgment of modification demonstrates a substantial and continuing change in circumstances from the dissolution decree. We agree.

tion.

During the dissolution, Lacie was four years old. Mother testified that during the dissolution trial Lacie was scared and confused, so Mother put Lacie in counseling. It was at this time that Lacie made the statements about which Mother testified in the dissolution trial. After the dissolution trial, Lacie stayed in counseling for about a month. After that time, Mother testified that Lacie no longer needed counseling. Lacie has not expressed fear of Mother not being her mother anymore nor contemplation of running away since the dissolution.

Regarding her feelings about running away at the time of the dissolution and her present feelings, Lacie testified:

"Q. [The Court] Did you ever tell your mom one time that you were afraid that, if you had to go stay with Dad, that she wouldn't be your mom anymore and you would run away?

"A. [Lacie] I wouldn't—I would rather—I would have ran away if I couldn't be with my mom or my mom died. I would have ran away.

"Q. [The Court] You would run away if you couldn't have been with your mom?

"A. Uh-huh.

"Q. Where would you go?

"A. I'd stay at my friend's house.

"Q. You'd stay at your friend's house. Okay. Would you still run away?

"A. No. I'd just stay at my friend's house.

"Q. Okay. Would you—If you couldn't— If you couldn't go to your—If you couldn't stay with your mom, would you run away?

"A. I would go to my dad's.

"Q. You'd go to your dad's. Okay."

In addition to the foregoing testimony, Lacie stated that when she stayed with Mother, she missed Father; and, when she stayed with Father, she missed Mother. She repeatedly indicated that she liked staying in the house belonging to Father better than staying in Mother's apartment. However, she indicated that there were things she liked about Mother's apartment. Lacie testified that she liked to stay with both Mother and Father.

On appeal, Mother does not question the trial court's decision allowing Lacie to testify. However, Mother notes that the preference of a child of tender years is entitled to "scant, if any, weight in a modification proceeding." *Betterton v. Betterton*, 752 S.W.2d 417, 419 (Mo.App.1988).

Yet, the trial court had more before it than Lacie's preference to live with both parents. Mother's own testimony confirmed that Lacie's emotional condition stabilized after the dissolution trial ended. The trial court did not indicate in its judgment that it placed any weight on testimony regarding Lacie's preference. Rather, the trial court considered the fact that Lacie no longer feared losing her mother.

An appellate court will give due deference to a trial court's ability to weigh and assess the credibility of witness testimony. *Cooper v. Cooper*, 893 S.W.2d 839, 841[2] (Mo.App.1995). The trial court may believe or disbelieve all, part, or none of witness testimony. *Id.* A trial court is in the best position to assess the credibility of the parties and other intangibles that are not completely revealed by the record on appeal. *P.L.W. v. T.R.W.*, 890 S.W.2d 688, 690[4] (Mo.App.1994). We will not second guess the trial court's assessment of witness testimony.

Mother argues that Lacie's emotional adjustment while living under the decree's custodial arrangement should be seen as a credit to Mother and not grounds to modify custody. She contends that the trial court penalizes her as custodial parent by finding Lacie's improved emotional condition as a substantial and continuing factor for modification. However, the trial court's modification does not punish Mother. Rather, the trial court's judgment seeks to craft a custodial arrangement in the children's best interests.

While the original decree was critical of both Mother and Father's behavior, it specifically raised concern about Mother's use of alcoholic beverages in the presence of Lacie and Dylan. The trial court, however, granted custody to Mother for the stated reason that Lacie was afraid of losing her mother and was prompted to want to run away. The decree further required Mother to refrain from the consumption of alcoholic beverages in the presence of the children. It can reasonably be inferred from this decree that the

trial court contemplated either granting Father sole physical custody of Lacie or granting Father more significant periods of physical custody. The court specifically scheduled Mother to have the greater amount of contact with Lacie because of Lacie's expressed fear and desire to run away. The evidence at the modification hearing demonstrated that Lacie is no longer afraid that she will lose her mother and no longer contemplates running away.

Mother relies on *Betterton*, 752 S.W.2d at 417 for the proposition that the trial court erred when it found a substantial and continuing change in circumstances. However, Mother's emphasis on *Betterton* involves her challenge of other factors listed in the modification decree. She cites no authority for the proposition that a trial court cannot consider a child's overcoming of fear as a substantial and continuing circumstance. We find the change in Lacie's emotional condition from the time of the decree to be a substantial and continuing change in circumstances as contemplated by § 452.410, RSMo 1994.

In addition to asserting that the trial court erred because it could not find a substantial and continuing change in circumstances, Mother's point relied on contends the trial court's judgment is not supported by the evidence, is against the weight of the evidence, and erroneously declares the law.

■ We find that this decision is not against the weight of the evidence and is supported by competent evidence. We presume the trial court viewed the evidence and entered a judgment in the best interests of the children. *Wilhelmsen v. Peck*, 743 S.W.2d 88, 95 (Mo.App.1987). The record is replete with testimony from family members, a family friend, Mother's fiance, and the parties themselves indicating that both Mother and Father are good parents and desire Lacie's best interests. Given the substantial and continuing change in Lacie's emotional condition after the dissolution and the trial court's finding that the children should not be separated, we cannot find that this decision is either against the weight of the evidence, or unsupported by the evidence.

■ Mother raises two issues that can be interpreted as arguments that the trial court erroneously applied the law. First, Mother suggests that the wording of the judgment indicates the trial court designed its judgment to prevent Mother from moving to another location. *See Fuchs v. Fuchs*, 887 S.W.2d 414 (Mo.App.1994). A custody plan based on alternating periods of two-week physical custody between Mother and Father is not the same as a specific geographical restriction as was the case in *Fuchs*. 887 S.W.2d at 415–16.

■ The record reveals testimony indicating that Mother is planning to move to Jefferson County sometime in the future. This move would be dependent on Richard Hoffman, her fiance, selling a house and Mother and Hoffman purchasing a house in Jefferson County. The record does not convey any indication that such a move could or would occur in the near future. Furthermore, the trial court has the "affirmative duty to enter a decree that is in the best interests of the children; the best interests of the parents are secondary." *R.W.H. v. D.M.H.*, 898 S.W.2d 144, 147[3] (Mo.App.1995) (citing *Luther v. Vogel*, 863 S.W.2d 902, 904 (Mo.App. 1993)).

■ In addition, Mother characterizes the custody arrangement established by the trial court as "a perpetual merry-go-round which cannot be in [the children's] best interests." She argues that the children will be confused as to which residence constitutes their home. Mother does not, however, point to any authority that finds a custody arrangement such as the one entered by the trial court is presumptively against the children's best interests. The court of appeals has affirmed similar custody plans. *See Alt v. Alt*, 947 S.W.2d 433 (Mo.App.1997). Nothing in the record indicates that either Lacie or Dylan would have difficulty regarding both their Mother's residence and their Father's residence as their home. The children have spent considerable time in both residences. Lacie will attend the same school she has always attended. The trial court's custody plan will not uproot the children from familiar surroundings. The children will now have the benefit of meaningful contact with both parents.

Again, we note the trial court's modification is presumed to be in the children's best

interests. *Wilhelmsen,* 743 S.W.2d at 95. Mother has neither by citation to authority, nor reference to evidence in the record demonstrated how the judgment is not in the best interests of the children. Mother's point is denied.

Judgment of the trial court is affirmed.

PARRISH, P.J., concurs in separate opinion.

MONTGOMERY, C.J., concurs.

PARRISH, Presiding Judge, concurring in result.

I concur in the result reached. However, I do not find it necessary to address the merits (or the lack thereof) of the custody plan for exchanging physical custody of the child every two weeks. That issue was not presented by the sole "Point Relied On" in appellant's brief.

The sole issue presented by appellant's "Point Relied On" was whether there was a showing of a continuing change of circumstances affecting the child or her custodian. I suggest, therefore, that the argument that the custody arrangement was "a perpetual merry-go-round" that was not in the child's best interests is not an issue in this appeal.

Notwithstanding, I am compelled to comment on *Alt v. Alt,* 947 S.W.2d 433 (Mo.App. 1997), in view of the principal opinion's reference to that case. My reading of *Alt* does not convince me that it stands for the proposition that the Western District "approved" the concept that the custody plan that shifted a child between parents every two weeks was in the best interests of the child. The issue in *Alt* was whether the trial court complied with the Western District's mandate in an earlier appeal. The issue, as suggested in the dissenting opinion in *Alt,* was whether the trial court misunderstood an earlier mandate.

I would recommend that trial judges who are considering custody arrangements that constantly shift children between parents read the dissent in *Alt.* I believe its suggestion that substantial confusion exists concerning the concept of joint custody is correct and that its criticism of custody plans such as was entered in this case is compelling.