**Peggy S. TILLEY, Petitioner–Respondent,**

v.

**John M. TILLEY, Respondent–Appellant.**

**No. 21606.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 30, 1998.

James M. McClellan, Sikeston, for Appellant.

James R. Tweedy, Bloomfield, for Respondent.

SHRUM, Judge.

In this domestic relations case, the trial court initially approved a plan of joint legal and physical custody for three children as proposed by John Tilley (Father) and Peggy Tilley (Mother). This plan called for alternating physical custody of the children between Father and Mother every other week. Approximately a year after the original judgment, Father moved for its modification. Specifically, Father asked for sole physical and legal custody of the children. Mother filed a cross-motion in which she sought their sole physical and legal custody. The trial court denied Father's motion but modified the judgment per Mother's request.

Father appeals, contending that (1) the trial court erred by not finding a substantial change in circumstances as alleged in his motion to modify; and (2) the trial court erred in finding a substantial change in circumstances as alleged by Mother and ordering the modification requested by Mother. We affirm that part of the judgment denying Father's motion to modify. We reverse and remand that part of the judgment granting Mother's cross-motion.

## FACTS

Father and Mother were married in 1982. Three children were born of the marriage. Mother and Father entered into a separation agreement on February 15, 1995. On the same day, a decree of dissolution was entered incorporating the terms of the separation agreement.

The custody arrangements agreed to by Mother and Father and decreed by the court gave Father and Mother joint legal custody of the children. As part of this plan, Mother and Father agreed to keep each other informed and confer on issues such as doctors and surgeons.

Mother and Father also agreed to a joint physical custody plan. Under this plan, the physical custody of the children alternated every other week between Mother and Father. Mother and Father were entitled to visitation on alternate legal holidays, with separate provisions for Christmas, Mother's Day, and Father's Day. Mother and Father both declined child support due to the joint custody arrangements.

Within a year—on March 7, 1996—Father moved to modify the custody provisions of the dissolution decree so that he would have sole legal and physical custody of the children. In his motion, Father claimed a continuing and substantial change in circumstances resulting from: denial of visitation by Mother; Mother did not comply with the joint custody plan; Mother left the children alone; Mother resided with a paramour and Mother's lifestyle was detrimental to the children; Mother failed to dress the children appropriately for the weather; Mother failed to help with medical care and transport the children for medical care; Mother used and abused alcohol; Mother, paramour, and one child slept in the same bed; and Father provided a more stable and loving environment.

Mother filed a cross-motion to modify custody seeking both physical and legal custody of the children and child support. Her motion claimed a substantial and continuing change in circumstances resulting from: Father's noncompliance with the joint custody plan; Father leaving the children with his mother during his custody time; Father not informing Mother of children's medical needs; Father having an overnight guest when children were present; and Mother providing a more stable and loving environment.

A hearing on the motions was held on July 22, 1996. Evidence produced by Father included his testimony, the testimony of his grandmother, the testimony of his sister, the testimony of Mother's husband, a family photo album, medical records, other photo-

graphs, and his Form 14. Mother's evidence consisted of her testimony and her Form 14. The trial court entered its judgment finding a substantial and continuing change of circumstances making the custody provisions of the original decree unreasonable. The modification granted Mother legal and physical custody of the children and granted father visitation. The trial court also required Father to pay $178 per month per child in child support. This appeal followed.

Additional facts will be set out in the discussion section of this opinion.

## STANDARD OF REVIEW

Our review of a judgment modifying a dissolution decree is governed by Rule 73.01(c)[1] and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *In re Marriage of Pobst*, 957 S.W.2d 769, 771 (Mo.App.1997). Thus, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 771[1].

■■■ Under Rule 73.01(c)(2), we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Pobst*, 957 S.W.2d at 772[4]. The trial judge may believe or disbelieve all, part, or none of the testimony of any witness, and the court may disbelieve testimony even when uncontradicted. *Id.* at 772[5]. A trial court is better able to assess the credibility of the parties and other intangibles that are not completely revealed by the record on appeal. *Id.* at 772[4].

All fact issues upon which no specific findings are made shall be considered as having been found according to the result reached. Rule 73.01(a)(3).

■■■ We defer to the trial court's findings on custody modification matters unless we are convinced the best interests of the child require a different disposition. *Pobst*, 957 S.W.2d at 771[2].

## DISCUSSION AND DECISION

*Point I: Denial of Father's Motion to Modify*

■■■ Father's first point asserts that the trial court erred when it refused to modify the custody provisions of the dissolution decree as he requested because he presented "overwhelming and credible evidence" showing a substantial and continuing change in circumstances from the time of the dissolution decree. We disagree.

In his brief, Father reprises many of his trial claims but often does not develop arguments about why the trial court committed reversible error. To the extent that Father does develop some arguments, he often ignores contrary testimony and evidence presented by Mother. Father simply recounts evidence favorable to his position, argues inferences from that evidence, challenges the credibility of Mother, and then asks this court to rule contrary to the trial court. In denying Father's motion to modify, the court apparently found Mother's evidence to be credible. Rule 73.01(a)(3); *Pobst*, 957 S.W.2d at 772. We defer to the trial court's credibility determinations. *Id.*

Father's "weight of the evidence" argument also is without merit. The record supports a conclusion that Father did not prove the substantial and ongoing change of circumstances that was a precursor to a finding that the best interests of the children require rejection of the joint physical custody plan. *Guier v. Guier*, 918 S.W.2d 940, 947[5] (Mo.App.1996).

Based on our limited review we cannot say that the trial court abused its discretion when it refused to modify the decree to vest Father with sole physical custody and sole legal custody. The judgment in that regard is supported by substantial evidence, is not against the weight of the evidence, and no error of law appears. An opinion on Father's claim for modification would have no precedential value and merely lengthen this opinion. In keeping with the spirit of Rule

1. All rule references are to Missouri Rules of Civil Procedure, 1996, unless otherwise indicated.

84.16(b), Father's contentions regarding the denial of his motion to modify are denied without discussion. Point I is denied.

*Point II: Granting Mother's Motion to Modify*

Father's second point maintains that the trial court erred in finding substantial and continuing change in circumstances that warranted a modification from joint legal and physical custody to Mother's sole legal and physical custody. We agree.

 A finding of a change in circumstances making the prior decree unreasonable is a " 'precursor to a finding that the best interests of the child necessitate modification.' " *Bomar v. Kurtz*, 951 S.W.2d 657, 660[4] (Mo.App.1997) (quoting *Guier*, 918 S.W.2d at 947). If the evidence " 'wholly fails' " to show a change in circumstances that makes the prior decree unreasonable, then there is not a change in circumstances upon which a modification of child custody can be based. *Guier*, 918 S.W.2d at 947. Once custody is adjudicated, the presumption is that the custody as originally decreed remains suitable and the burden of showing a substantial change of condition is on the moving party. *Ijames v. Ijames*, 909 S.W.2d 378, 380 (Mo.App.1995).

Here, the trial court's judgment modifies both physical custody and legal custody provisions of the original decree. Consequently, the evidence must show a substantial and continuing change in circumstances regarding both physical and legal custody.

We look first at evidence of changes affecting the joint physical custody plan. The only evidence adduced on this subject was (1) testimony about problems with or lack of cooperation as to certain holiday visitation and (2) the guardian ad litem's report that the two older children "did not like ... living one week with one parent and one week with the other, that it's too much changing for them constantly."

 Interference by a parent with the visitation rights of the other parent is a change in circumstances which may justify modification of custody, especially where the evidence shows an unjustified and flagrant pattern of willful denial of visitation. *See*

*Lindell v. Coen*, 896 S.W.2d 525, 528[9] (Mo. App.1995). Ordinarily, however, interference with custody rights is not a conclusive factor, but a relevant factor to be considered in a modification proceeding. *Conoyer v. Conoyer*, 695 S.W.2d 480, 483[11] (Mo.App.1985).

Here, Mother testified that Father had the children both Easter and Memorial Day, yet they were supposed to alternate holidays. In addition, Father testified to problems in visitation on New Year's Day and Independence Day. Yet, when Mother's attorney asked her what type of visitation she wanted Father to have if she were awarded sole custody, Mother answered that she would "consider alternating holidays." This hardly shows a belief by Mother that Father was guilty of continual or flagrant interference with her holiday visitation. To the contrary, the record suggests that the parties alternated holiday visitation with only minimal problems. We also note that before the modification, the parties shared physical custody for over a year under their alternating week plan. These weekly exchanges of custody occurred without evidence that this created confusion or problems for the parents. Considering the frequency of custody exchange without incident and Mother's concession that she could still "consider alternating holidays," there is not in this record an evidentiary basis to support a finding of a "change in circumstances" based on Father's alleged interference with visitation.

 By agreement of the parties, the guardian ad litem interviewed the three children and reported the results of that interview to the trial court. He related that the four-year-old boy was shy and mostly nonresponsive. Regarding the two oldest children, daughters age 10 and 12, the guardian ad litem reported:

"[They] told me that they love their father and their mother and they want to spend time with both of them, but they both told me that they do not like this living one week with one parent and one week with the other, that it's too much changing for them constantly. They don't feel like they have a stable place, one place to go home.

"And both of the girls told me that they would prefer to spend or have their one home most of the time with their mother. They love their father and they want to spend time with him but they didn't want to continue this 50/50 situation.

"They both did express a great ... wish that they continue at the Bloomfield School District.... This is where all their friends are and they did not want to be moved up to the Advance School.

"[B]oth children told me that they ... got along well with their mother's new husband, Rob, and they also said they got along well with their father's girlfriend, Nancy, and they really didn't have trouble getting along with them. But they wanted to be mainly at their mother's."

The guardian ad litem described the girls as "bright and mature." Father testified that he had seen no change in his daughters' "behaviors" after the dissolution. He described them as "pretty well adjusted." Mother's new husband, Rob Kennedy, first met the children in November 1995. He has seen no "[p]roblems with the children or any acting out by them."

When Mother was asked why she believed the "every other week system" was not working, her only response was "[b]ecause the children [do] not want to go home every Sunday that I have them." Such a reason was not evidence of a substantial and continuous change of circumstances. This response by children would be exactly what divorced parents could expect under any shared custody arrangement when children love both parents.

Significantly, Mother did not contradict Father's testimony that the children were well adjusted and that their behavior had not changed after the dissolution. While the trial court was free to disbelieve Father's testimony and that of Rob Kennedy regarding the normalcy and lack of problems with the children, Mother offered no evidence that the joint physical custody plan itself—as opposed to the apportionment of joint physical custody—was unworkable or was adversely affecting the children.

The guardian ad litem's report does not provide an evidentiary basis for finding a change in circumstances concerning joint physical custody. To the contrary, his report strongly shows that the daughters want significant time with each parent but want to be "mainly at their mother's." Such an expressed preference is not evidence of "changed circumstances" due to nonworkablilty of the joint custody plan.

■ While the preferences of a twelve-year-old child and a ten-year-old child are entitled to some weight, these preferences in and of themselves are not decisive. *See Ijames*, 909 S.W.2d at 380[7] (Mo.App.1995). The undisputed fact that children prefer to live with one parent is not a sufficient reason upon which to base the granting of custody to that parent. *Id.* This rule has developed because, "the modification of a custody order should not turn upon the temporary whims or desires of a child." *Id.*

■ At most, the daughters' preferences are some evidence that the joint physical custody plan might need a different apportionment. *See Alt v. Alt*, 896 S.W.2d 519, 521 (Mo.App.1995) (*Alt I* ). By statutory definition, joint physical custody means "an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents." § 452.375.1(2), RSMo 1994. Yet, joint physical custody does not require a trial court to allocate each parent an equal amount of time with the child. *Morton v. Stockdale*, 888 S.W.2d 362, 363 n. 4 (Mo.App. 1994).

From our review of the record it cannot be said that the trial court had an evidentiary basis to revoke the order of joint physical custody and award single physical custody to Mother. *See Alt I,* 896 S.W.2d at 522. Thus, we hold that the trial court erred in revoking the order of joint custody.

■ We understand that alternating custody every two weeks has the potential for leaving children with the feeling that they do not have "a stable place, one place to go home." As this court has observed, "[i]n the past, appellate decisions have commented upon the negative effects which may result

when children are frequently shifted back and forth between parents." *Rodriguez v. Rodriguez*, 801 S.W.2d 80, 85 (Mo.App.1990) (quoting J. GOLDNER, MISSOURI DISSOLUTION OF MARRIAGE, SUPPORT AND CHILD CUSTODY § 17–22, p. 355 (1987)). We believe, however, that a trial court has the freedom to adjust a joint physical custody plan to allow the child to spend most of the time with one parent. *Alt I*, 896 S.W.2d at 522–23. *See also Alt v. Alt*, 947 S.W.2d 433, 435–37 (Mo. App.1997) (*Alt II*) (Smart, J., dissenting). Accordingly, upon remand the trial court should consider what re-apportionment in the physical custody of the children, if any, may be in their best interests. *See Alt I*, 896 S.W.2d at 523. *See also Alt II*, 947 S.W.2d at 435–37 (Smart, J., dissenting).

■ Turning to the trial court's modification of joint legal custody, Mother complained in her motion that Father failed to keep her informed about medical decisions. Father testified that Mother refused to return phone calls about a tonsillectomy for the ten-year-old daughter. Mother denied not returning the phone call. Mother testified that Father asked her about a surgeon for the tonsillectomy, but was not given a chance to check on a doctor as she requested. Mother found out that the child had the tonsillectomy after the procedure had been done. Mother, however, admitted that she knew a tonsillectomy had been recommended before the surgery took place.

Mother testified that Father took a child to the emergency room for a fever, but she did not find out until a week later. There was testimony from both parents about a tuberculosis test for two children. Apparently, both parents took the children in for tests, but the health center was not giving tests when Mother took the children to be tested. The children were tested when Father took the children to the health center.

■ These differences only relate to one aspect of the plan for joint legal custody. We note Father even testified that Mother complied with the joint custody plan, "other than the doctors." A modification from joint legal custody to one parent's sole legal custody is not mandated to correct a single problem of nonrecurring nature. *See Alt I*, 896

S.W.2d at 522. As with the modification of joint physical custody, we liken the trial court's modification of joint legal custody to the sledgehammer mentioned in *Alt I*, 896 S.W.2d at 522. Even under our standard of review, we do not find evidence to support a change from joint custody to sole legal custody. Relying on *Alt I* as authority, we reverse that part of the judgment that modified the joint legal custody provision.

Section 452.375.1(1), which defines joint legal custody states that, "unless allocated, apportioned, or *decreed*, the parents shall confer with one another in the exercise of decision-making rights, responsibilities and authority[.]" The italicized language indicates that a trial court may resolve problem areas in a joint legal custody plan without wholly eliminating all of its provisions.

Upon remand, the trial court may consider whatever adjustments—if any—it may find to be in the best interests of the children about the specifics of the joint legal custody plan and the joint physical custody plan. *See Alt I* at 523. If the trial court adjusts either plan so that it is appropriate to revisit child support, then the trial court should consider that additional issue. *Id.*

That part of the judgment denying Father's motion to modify is affirmed; the trial court's judgment and decree of modification is reversed and remanded for proceedings consistent with this opinion.

PARRISH, P.J., and BARNEY, J., concur.