Stacey L. KERR, Petitioner–
Respondent,

v.

Debra L. LOUDERBACK, Respondent–
Appellant.

No. 23400.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 26, 2001.

Joanna V. Billingsley, Ozark, for Appellant.

Larry K. Bratvold, Springfield, for Respondent.

SHRUM, Judge.

This is a domestic relations case in which Debra L. Louderback ("Mother") moved to modify that part of a dissolution decree that dealt with physical custody of and support for her minor daughter. The trial court found a modification would not serve the best interests of the child, and denied the relief requested. Mother appeals, charging that the trial court's decision was against the weight of the evidence. We disagree. We affirm the judgment.

## STATEMENT OF FACTS

Mother and Stacy L. Kerr ("Father") were married on April 16, 1985. Their only child, Cagney J.L. Kerr ("Cagney"), born October 4, 1985, is the subject of Mother's motion to modify. The dissolution decree vested "joint legal custody" of Cagney in Mother and Father, granted "physical custody" of Cagney to Father, and ordered extensive "visitation" periods for Cagney with Mother. Cagney's "visitation" time with Mother included every other weekend, several specified holidays, certain birthdays, Mother's day, and most of each summer.[1]

This physical custody arrangement continued until January 1, 1999, when Cagney moved to Mother's home. Mother had recently moved into the Clever, Missouri, school district where Cagney was attending school, and Cagney stated she wanted to move "[b]ecause I miss my mom and my brothers." Father testified he considered this an informal arrangement and did not intend to relinquish custody. On February 19, 1999, Mother filed a motion to modify the dissolution decree requesting, among other things, the court "to award custody of Cagney" to her. On October 8, 1999, a trial was conducted in which several witnesses testified for both parties. After hearing the evidence, the trial judge found that the change in residence to Mother's home could qualify as a substantial and continuing change in circumstances to warrant a modification of the custody part of the decree; however, he also stated he must still decide if this was in the child's best interests. The trial judge then found it was not in Cagney's best interests for "Mother to become [Cagney's] legal custodian and for [Cagney] to primarily live with the Mother." Therefore, the motion to modify was denied. Mother's appeal to this court followed.

 Our review of the trial court's judgment is governed by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *Tilley v. Tilley*, 968 S.W.2d 208, 211 (Mo.App.1998). Thus, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.*

---

1. We note the trial court used the term "visitation" in its decree in describing the substantial periods of time Cagney would be with Mother. Even so, we do not believe the court intended to use "visitation" in the sense the word is used in § 452.400, RSMo 1994, to describe the rights of a parent who is denied custody. The physical custody order, although not so labeled, was one of joint physical custody because the decree, although placing with Father the majority of the time, specified in writing significant periods of time during which Cagney was to live with Mother or be in her care and supervision. §§ 452.375.1(2) and 452.375.8, RSMo Cum. Supp.1995; *Morton v. Stockdale*, 888 S.W.2d 362, 363[1] n. 1 (Mo.App.1994); *Nix v. Nix*, 862 S.W.2d 948, 951[2,3] (Mo.App.1993).

■ "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, 536 S.W.2d at 32[2]. Under Rule 84.13(d), formerly Rule 73.01(c), we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Tilley*, 968 S.W.2d at 211. Trial judges are better able than appellate courts to assess the credibility of the parties and other intangibles that are not completely revealed by the record on appeal. *Id.* at 211[2].

## DISCUSSION AND DECISION

Mother's point relied on charges the trial court abused its discretion when it denied the motion to modify because "the weight of evidence showed that the best interests of the child would be served by a transfer of custody...." [2] Mother premises this argument on the fact that Cagney had been living with her for ten months, Cagney was "happy, adjusted to her environment, and doing well in school[,]" and Cagney's preference was to remain at Mother's home.

The trial judge presumably found that since Cagney had been living with Mother for ten months, this satisfied the requirement under § 452.410, RSMo 1994, that a change in circumstances existed to justify an inquiry into whether this change promoted the best interests of Cagney. *See Tilley*, 968 S.W.2d at 212 (holding change in circumstances is a precursor to determining best interests of child). When deciding what is in the best interests of a child, a court seeks the guidance of the statutory factors listed in § 452.375.2, RSMo Cum.Supp.1998.[3] *See Reeves–Weible*, 995 S.W.2d at 62–63[23].

■ Viewing the evidence in the light most favorable to the judgment, we find ample evidence to support the judgment that Cagney's best interests are better served. Mother's household consisted of herself, Blake (Cagney's half-brother), Blake's girlfriend (Jennifer), and Rusty (Mother's fiance). Cagney shared a room with Jennifer, who was a senior in high school and staying there because she was having problems with her mother. Blake testified that he and Jennifer were sexually active, but claimed this occurred when the home was unoccupied. Jennifer was convicted of shoplifting, and since meeting Blake had a bad attitude according to testimony from her mother. Rufus testified that Rusty used to smoke marijuana on the job in front of him. He also testified that Blake had an attitude problem. Before being married to Father, Mother was married to Terry Louderback, and this wedlock produced the aforementioned

---

2. Mother's brief contains two points of trial court error, but we find our resolution of her first point to be dispositive, and as such, we do not address her second point.

3. Those factors are:

"(1) The wishes of the child's parent as to custody and the proposed parenting plan submitted by both parties;

"(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

"(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

"(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

"(5) The child's adjustment to the child's home, school, and community;

"(6) The mental and physical health of all individuals involved ...;

"(7) The intention of either parent to relocate the principal residence of the child; and

"(8) The wishes of a child as to the child's custodian."

Blake and Rufus. Mother is currently engaged to Rusty Louderback, who is Terry's brother and Blake's uncle. The couple have been together for three and one-half years, but have yet to set a date for marriage. At oral argument, Mother's lawyer asserted "there are lots of people who don't believe there is anything wrong" with such a living arrangement. However, the courts of this state have *not* embraced that view. Morals *are* a relevant consideration in deciding whose custody will serve the best interests of the child. *In Re Marriage of Berger,* 950 S.W.2d 307, 310[9] (Mo.App.1997).

> "A [parent's] conduct of affairs with the knowledge of children and while they are present in the house has been held to be a critical factor in denying ... custody [to such parent]. 'Private personal conduct by a parent which could well have an effect on children during the years in which their character, morality, virtues and values are being formed cannot be ignored or sanctioned by courts.' "

*Jones v. Jones,* 937 S.W.2d 352, 356 (Mo. App.1996) (citations omitted). The evidence which describes the environment in Mother's home amply supports the trial judge's finding that the proposed change in custody was not in Cagney's best interests.

On the other hand, Father testified his household consisted only of himself and Cagney, but that his girlfriend spent one night per week at the home.[4] Furthermore, he claimed Mother did not set rules for Cagney to follow (which he did), and that Cagney's attitude had detrimentally changed since living with Mother. Terry also testified that Mother did not provide rules for Blake to follow. Neither Mother nor her witnesses had anything negative to say about Father as a parent. We presume the trial judge believed the environment at Father's home served Cagney's best interests more so than that at Mother's home. *See Lisec v. Coy,* 793 S.W.2d 173, 177[5] (Mo.App.1990) (holding ability to provide a stable and comfortable home is significant factor in determining how a child's best interests may be met); *see also Rumbolo v. Phelps,* 759 S.W.2d 894, 895 (Mo.App.1988) (holding the decision reached by the trial court is presumed to have been done in the best interests of the child).

Mother has ignored the evidence referenced above. She asserts the evidence showed it was in Cagney's best interests to continue to reside with her because Cagney had done so for ten months, she was happy, well-adjusted, and doing well in school, and it was her preference to do so. However, Mother testified Cagney had always done well in school, and there was no evidence from either party that Cagney had been anything but well-adjusted and happy throughout her life.

In arguing her point, Mother discriminately selects evidence that sheds a favorable light upon her case and ignores that which adversely affects her position. In doing so, Mother ignores the fact that a trial judge is free to believe or disbelieve all, part, or none of the testimony of any witness, and the court may disbelieve testimony even when uncontradicted. *Tilley,* 968 S.W.2d at 211[1].

Mother also argues that "[a]lthough the Court stated on the record that it respected the wishes of the child the court obviously gave no weight to the decision of this 14 year old child...." Mother has failed to point to anything in the record which indicated the trial court gave *"no weight"* to Cagney's preference. To the contrary, Mother admits the court stated it respected her wishes. Furthermore, in the judgment itself the court acknowledged the fact that Cagney intended to stay with Mother.

■ The court should consider a child's preference along with other facts

---

4. We hasten to add that Father's once-a-week immorality has equal potential for setting a bad example for Cagney, and our decision to affirm the trial court's judgment should not be seen as sanctioning Father's conduct.

and circumstances before it, but that preference should be followed only if the welfare and interests of the child, as determined by all evidence, are consistent with that preference. *Ijames v. Ijames*, 909 S.W.2d 378, 380[7] (Mo.App.1995). A custody modification should not turn upon the "temporary whims or desires of a child," and although it is undisputed that the child wishes to live with a certain parent, this fact is an insufficient basis for awarding custody to that parent. *Id.*

Here, the trial judge was faced with Cagney's desire to live with Mother, and although this had been continuing for ten months, the court had evidence before it that this might not be in her best interests. The trial judge had to consider this factor of preference along with the evidence demonstrating it might be detrimental to Cagney's best interests to remain in Mother's care. We presume the judge made this determination with Cagney's best interests in mind. *Rumbolo*, 759 S.W.2d at 895. We find there was ample evidence in the record to support the judgment denying the motion to modify. Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and MONTGOMERY, J., concur.