# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### May 3, 2005 Session

## STATE OF TENNESSEE v. DARNELL LAVELLE WELCH
## AKA "PLATINUM"

**Direct Appeal from the Circuit Court for Tipton County**
**No. 4773     Joseph H. Walker, III, Judge**

---

**No. W2004-01515-CCA-R3-CD  - Filed September 15, 2005**

---

The defendant, Darnell Lavelle Welch, was indicted for premeditated first degree murder.  A jury convicted the defendant as charged, and he was sentenced to life in prison.  The defendant now appeals his conviction, alleging that the evidence was insufficient to support the conviction in two respects:  (1) that self-defense was not rebutted beyond a reasonable doubt; and (2) that premeditation was not proven.  Upon review, we conclude that the jury was justified in rejecting self-defense and in finding that the defendant acted with premeditation in killing the victim.  Therefore, the defendant's conviction is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Gary F. Antrican, District Public Defender, and David S. Stockton, Assistant Public Defender, for the appellant, Darnell Lavelle Welch aka "Platinum."

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and David S. Stockton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

This case stems from the fatal shooting of the victim, Jeffrey Somerville, by the defendant in the early hours of July 13, 2003, in Covington.

Courtney Somerville was a cousin of the victim. He was with the victim from the evening of July 12th until just before the victim was shot. He stated that he saw the defendant approach a vehicle on North Main Street in Covington looking for Terrence Simpson. The defendant believed that Simpson had robbed the defendant's younger brother, Boo. The defendant asked Simpson to get out of the car Simpson was in. The victim and Courtney Somerville went across the street and intervened on Simpson's behalf. A general melee broke out and, according to Courtney Somerville, the defendant and his brother were "beat down." The defendant ran away and then returned, saying they would "take it to the Hill," meaning the Hill Street Apartments. The defendant and his brother were driving to Hill Street while Courtney Somerville and the victim were running in that direction. The defendant stopped on Valley Street and pulled a gun or guns from the trunk. The victim and his cousin took refuge in the victim's residence on Hill Street where the victim's mother, Beatrice Somerville, also lived. By this time, the defendant and his brother had already reached Hill Street and had guns. The city police were notified by a neighbor, Wynette Wilks, and an officer responded to the scene. The officer was not informed of the identity of the individuals causing a problem or any other details and left the scene. Later, the defendant returned on foot on a pathway. Courtney Somerville, the victim, and Beatrice Somerville were outside but returned inside the house when they saw the defendant. Courtney Somerville stated that the defendant was firing the gun in the air. Mrs. Somerville attempted to speak to the defendant, and the defendant told her that if she would move from the door, he would shoot both Courtney Somerville and the victim.

Acquavian Alston drove up and told the defendant to leave the area. The defendant told Alston that if Simpson would get out of Alston's car, he would kill him too. The defendant eventually left by way of the path he had arrived on. Later, the occupants of the Somerville house were again outside when the defendant, accompanied by Boo, returned in the defendant's car. Both the defendant and Boo were firing guns, and the Somervilles retreated inside. After this, the victim or Courtney Somerville sent for Victor Rudd to bring them a gun. Mr. Rudd brought a nine millimeter handgun and left it with the previously unarmed victim. Courtney Somerville walked to his home, which was located four houses down the street. Before he closed the door, he heard shots being fired and heard Beatrice Somerville yelling. Upon returning, he saw the victim on the ground in a pool of blood.

Kenneth Whitmore testified that he lived directly across the street from the victim. He had seen the defendant on Hill Street the night of the shooting, with a pistol in his hand and "having words" with the victim. The defendant was saying something about someone jumping on his brother, Boo. The defendant fired the weapon twice in the air and left. Later that evening, Whitmore saw the victim with a handgun. Whitmore later saw a vehicle, similar to the defendant's vehicle, pull up. Whitmore said he could not identify the driver. He heard four shots but said that he did not see the victim "fire nary a shot." The car then left the area. Whitmore admitted he had given a statement to Investigator King saying that the defendant shot the victim, but he could not testify to that. He stated that he was standing within arms' reach of the victim when the victim was shot.

Aquavian Alston testified concerning an altercation that occurred on North Main Street, at approximately 11:00 p.m. on July 12th. The defendant approached Alston's car in an intoxicated

state and addressed two of the occupants, Terrence Simpson and Terry Currin. The defendant was accusing the two of planning to rob his brother, Boo. Heated words were exchanged, and a fight broke out. The victim and Courtney Somerville joined in the fight. The victim struck the defendant more than once, and Courtney Somerville grabbed Boo in a headlock. The defendant ran away. Later that evening, Alston's sister, Wynette Wilks, called Alston and reported gunfire in her neighborhood on Hill Street. On his arrival, Alston saw the defendant firing a gun in the air. The defendant told Alston that he would kill Simpson if Alston allowed Simpson to get out of the car. Alston laughed at the defendant and told him to go home.

Wynette Wilks stated that she lived across the street from the victim. She had first seen the defendant with his brother after 1:00 a.m. on July 13th. Later, she saw the defendant drive by and fire the gun in the air. Later still, she observed the defendant addressing the victim, who was in his house. At that time, the defendant told the victim he was going to kill him.

Beatrice Somerville was the mother of the victim. She first saw the defendant drive by, shooting a gun. Later, she saw him approach on foot from the end of the street, holding a gun. She asked him what was going on. Addressing the victim, the defendant said if the victim's mother were not standing in the door, he would "let this m-f go and I'll go to jail, ain't going to do no time." Later, the defendant returned. Ms. Somerville said she saw the car, heard a shot, and saw the victim fall to the ground. She stated that she was unaware that her son had a weapon.

Officer Allen Willis, of the Covington Police Department, was on duty on July 12-13, from 10:00 p.m. to 6:00 a.m. He received a report of "shots fired" on North Main Street and went to the scene. A crowd of 150 to 200 people was present but was dispersing. He saw the defendant, who appeared angry to the officer, and the defendant remarked to others that "we're going to take this to the hood." The defendant left in his vehicle. At 12:55 a.m., Officer Willis received another report of "shots fired," this time at the Hill Street Apartments. He responded immediately to the scene. Several people were present, including the victim, Beatrice Somerville, Kenneth Whitmore, and Courtney Somerville. None would provide information on what had happened, and the officer left. Thirty minutes later, he received another call and returned to Hill Street. There he found the victim sprawled in the parking area with a gunshot wound to his face. A handgun was found under a vehicle approximately ten feet from the victim's body.

Captain Larry Russell with the Covington Police Department, stated he encountered the defendant at 1:15 p.m., on July 13th, after the defendant had surrendered himself at the Tipton County Jail. During questioning, the defendant first denied shooting the victim, then said that he had shot the victim but that the victim had fired on him first. Initially, the defendant claimed he could not remember what he had done with his weapon but later stated that he had thrown it in a pond in Haywood County. The gun was not recovered.

Officer James A. King served as the investigator for the Covington Police Department. Other officers had secured the crime scene prior to Officer King's arrival. He noted that a semiautomatic handgun was under a vehicle, with its magazine about three feet away. No shell casings were found

at the scene. He smelled the weapon for a scent of cordite and opined that the gun had not been fired recently. He stated that no tests were performed on the weapon. Officer King stated that he requested the coroner to perform a residue test on the victim's hands to determine if the victim had fired a weapon recently.

The defendant was questioned by Officer King and said that he went to the victim's neighborhood because the victim had been involved in robbing the defendant's brother. The defendant stated he was in the car when the victim shot at him, and he returned fire. Officer King examined the defendant's vehicle and found no bullet holes. The defendant stated that his weapon was a nine millimeter Ruger and that he had thrown it in a pond.

Dr. Teresa Allen Campbell, a forensic pathologist, had assisted in the autopsy of the victim. Dr. Campbell testified that the victim died of a gunshot wound to the face. She stated that she was unaware of any request to perform a residue test of the victim's hands, and no such procedure was done.

## Sufficiency

The defendant, in his challenge to the sufficiency of the evidence to support the verdict, argues that the State failed to rebut the defendant's theory of self-defense and failed to prove premeditation beyond a reasonable doubt.

The standard for an appellate court reviewing a sufficiency challenge is "whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002); see also Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979). A verdict of guilt removes the presumption of innocence and imposes a presumption of guilt. Thus, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 515, 557-58 (Tenn. 2000). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court does not re-weigh or re-evaluate the evidence." Evans, 108 S.W.3d at 236 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Nor may this court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Evans, 108 S.W.3d at 236-37.

## Self-Defense

In his statement to police, the defendant claimed that he shot the victim in response to the victim shooting at him.

It is the State's burden to negate the existence of self-defense beyond a reasonable doubt if it is raised by the proof. See Tenn. Code Ann. § 39-11-201(a)(3). Whether an individual acted in self-defense is a factual determination to be made by the trier of fact. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). Furthermore, the initial use of force provoked by the defendant may negate the availability of self-defense. See Tenn. Code Ann. § 39-11-611(d).

There is ample evidence in this record to portray the defendant as an aggressor instead of an aggrieved victim entitled to defend himself. The evidence established that the defendant essentially stalked the victim from the time of the confrontation on North Main Street until he finally shot him in front of the victim's residence. The victim was apparently armed at the time of the fatal confrontation, but there was no evidence other than the defendant's statement that the victim ever utilized his weapon. It is the jury's prerogative to reject that claim. In light of the defendant's relentless pursuit of the victim together with his stated intention to kill him, the jury was well justified in rejecting the defendant's claim of self-defense.

## Premeditation

Lastly, the defendant claims that he was still inflamed with such "excitement and passion" from the initial confrontation so as to be incapable of premeditation.

To support the defendant's conviction for first degree murder, the State was required to prove beyond a reasonable doubt that the defendant killed the victim intentionally and with premeditation. Tenn. Code Ann. § 39-13-202(a)(1). A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a).

> [P]remeditation is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d).

After the initial altercation occurred on North Main Street, the defendant armed himself and began to relentlessly pursue the victim, even as the victim took refuge in his own home. The defendant announced his intention to kill the victim and followed through on his promise.

The determination as to whether a defendant acted with premeditation is for the trier of fact, and it may be inferred from the manner and circumstances of the killing. State v. Holder, 15 S.W.3d 905, 914 (Tenn. Crim. App. 1999).

As we view the evidence in a light most favorable to the State, it is apparent that the proof was sufficient for a rational jury to have found, beyond a reasonable doubt, that the defendant killed the victim intentionally and with premeditation.

## Conclusion

We conclude from the record that there was sufficient evidence for the trier of fact to reject self-defense by the defendant beyond a reasonable doubt and, further, that the evidence supports the finding that the defendant acted with premeditation. Accordingly, the judgment is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE