**In re the MARRIAGE OF Amy Jane RICHARDS and Michael George Richards.**

**Amy Jane Richards, Petitioner–Appellant,**

**v.**

**Michael George RICHARDS, Respondent–Respondent.**

**No. 26668.**

Missouri Court of Appeals, Southern District, Division Two.

April 17, 2006.

Appeal from the Circuit Court of Stone County, Carr L. Woods, Associate Circuit Judge.

Eric A. Farris, Branson, for appellant.

J. Patrick Sullivan, Sullivan Law Office, P.C., Branson West, for respondent.

PHILLIP R. GARRISON, Judge.

Amy Jane Richards ("Mother") appeals the judgment dissolving her marriage to Michael George Richards ("Father") contending that the weight of the evidence did not support the trial court granting Father joint physical custody of their two minor children. She argues that Father's alleged domestic abuse prevented such an arrangement from being in the children's best interest. We affirm.

Father and Mother were married on September 27, 1992, in Aurora, Missouri. There were two children born of the marriage, A.E.R., born September 24, 1993, and E.M.R., born July 3, 1997 (collectively referred to as "the children"). The parties separated on November 2, 2001, at which time the children resided with Mother.

Mother filed her petition for dissolution of marriage on November 6, 2001. The trial court heard evidence and on August 11, 2004, entered its judgment of dissolution of marriage granting joint physical custody of the children to both parties, and granting sole legal custody of the children to Husband pursuant to a parenting plan. Mother now appeals.

■ Appellate courts will affirm a trial court's child custody determination if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *In re Marriage of Horinek*, 41 S.W.3d 897, 901 (Mo.App. S.D.2001). "We accord a trial court's judgment greater deference in custody decisions than in other cases." *In re Marriage of Pobst*, 957 S.W.2d 769, 771 (Mo.App. S.D.1997). We will therefore affirm the decision unless we are "firmly convinced that the welfare and

best interests of the children requires otherwise." *In re Marriage of Horinek,* 41 S.W.3d at 901 (quoting *Flathers v. Flathers,* 948 S.W.2d 463, 465 (Mo.App. W.D. 1997)). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment. *State ex rel. Dept. of Social Services, Div. of Child Support Enforcement v. Maher,* 976 S.W.2d 75, 77 (Mo.App. W.D.1998). Furthermore, we defer to the trial court's determinations as to witness credibility. *Kerr v. Louderback,* 35 S.W.3d 511, 512 (Mo.App. S.D.2001). "Trial judges are better able than appellate courts to assess the credibility of the parties and other intangibles that are not completely revealed by the record on appeal." *Id.*

We begin by noting that any child custody arrangement ordered by the trial court must be in accordance with the best interests of the children. Section 452.375.2.[1] Other than cases in which the trial court expressly finds to the contrary, it is the public policy of this state that frequent, continuing and meaningful contact with both parents after separation or dissolution is in the best interest of the children. Section 452.375.4. In determining whether a particular arrangement serves the childrens' best interests the trial court must consider the following factors:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the courts shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Section 452.375.2. In Mother's sole point on appeal, she argues that the evidence did not support the trial court's findings as to subsections (4) and (6) in that Father displayed a volatile temper and a history of abuse.

As to subsection (4) the trial court found:

From the testimony and evidence, the court finds that [Mother] is not likely to allow the children to have frequent, continuing or meaningful contact with [Father] but that [Father] is likely to allow the children to have frequent, continuing or meaningful contact with [Mother]. Therefore, this statutory factor requires that a Joint Physical arrangement with

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

specific custody times be ordered so that each party is guaranteed equal time with the children.

This statutory factor requires that a Joint Physical Custody with sole custody to [Father] arrangement is in the best interests of the children.[2] Curiously, Mother does not dispute the trial court's finding that she was not likely to allow the children to have frequent, continuing or meaningful contact with Father. This determination alone is enough to support the trial court's finding that Father would be more likely than Mother to allow the children to have frequent, continuing and meaningful contact with the other parent. However, Mother argues that Father's alleged history of verbal and emotional abuse and episodes of bad temper make the court's finding against the weight of the evidence. Those contentions are relevant to subsection (6), not to subsection (4). Therefore, this portion of her point is denied.

As to subsection (6) the trial court found:

> No evidence was presented regarding the mental and physical health of any of the individuals involved. No history of abuse of any individual involved was presented.
>
> Therefore, this statutory factor does not weigh in favor or against any particular arrangement.

Mother argues that several alleged incidents constitute evidence of abuse and of Father's volatile temper. She argues that Father once threatened to physically harm her by raising his hand to strike her; that he "yell[ed]" at her during one of the children's birthday parties; that he accused her of having an affair in front of the children; that he had an argument with her parents in front of their oldest child at the birth of their youngest child; that he had an "angry" conversation with a member of their church regarding the transportation of the children; that he "yell[ed]" at the director of the children's learning center; and that, on different occasions, Father kicked a hole in a door in their home, damaged a different door in their home and kicked a dishwasher.

Mother contends that the trial court simply ignored the evidence regarding the above incidents in finding that no history of abuse was presented. She relies on *Gant v. Gant*, 892 S.W.2d 342, 345 (Mo. App. W.D.1995), for the proposition that when evidence of abuse has been presented, the trial court may not ignore or fail to address it in its judgment. Mother misapplies *Gant* to this case. The crux of *Gant* was the trial court's failure to enter *any* written findings as required by Section 452.375.2(6). In this case, the trial court entered written findings as to the best interests factors of Section 452.375.2 including subsections (4) and (6). It is apparent that the trial court did not consider the allegations made by Mother to constitute a history of abuse or a pattern of domestic violence as it found that "no history of abuse of any individual involved" was presented. As such, the gravamen of Mother's contention is that her allegations did constitute a history of abuse or a pattern of domestic violence.

Although Section 452.375 does not define "domestic violence," its meaning may be gleaned from Section 452.400. *See Gant*, 892 S.W.2d at 345; *see also Marquez v. Marquez*, 136 S.W.3d 574, 580 (Mo.App. S.D.2004). In considering whether to grant visitation to a spouse with a history

**2.** Both parties agree that the trial court ordered Joint Physical Custody with sole *legal* custody to Father.

of domestic violence, Section 452.400.1 states that "a court shall consider the parent's history of inflicting or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on other persons." *Gant,* 892 S.W.2d at 345 (quoting Section 452.400.1). Furthermore, abuse is defined under Section 455.010(1) as "including but not limited to, 'the occurrence of any of the following acts, attempts or threats against a person': assault, battery, coercion, harassment, sexual assault, or unlawful imprisonment." *Marquez,* 136 S.W.3d at 580 (quoting Section 455.010(1)).

■ None of the alleged incidents necessarily constitute a history of abuse or a pattern of domestic violence under Section 452.375.2(6). At no point is it alleged that Father was physically violent with his children or that he ever struck Mother. Rather, the majority of allegations revolve around verbal confrontations involving Father. He is said to have had heated arguments with Mother, Mother's parents, a member of the parties' church and the director of the children's learning center. Mother points to no cases which hold that such arguments constitute a history of abuse or a pattern of domestic violence under the statute.

Turning now to Mother's remaining assertions, she also relies on *Gant* for the proposition that property damage and evidence of a volatile temper can be considered domestic violence. However, that portion of *Gant* is distinct from this case. There, the husband was alleged to have threatened wife's life on numerous occasions; to have physically abused her; and that during arguments he became enraged and destroyed his own property while in the presence of Wife, causing her to fear for her safety. *Gant,* 892 S.W.2d at 343. In this case, Mother argues that Father has exhibited similar behavior by kicking a dishwasher, kicking a hole in a door and breaking a different door in their home. Mother failed to give any further detail during her testimony. There was no explanation as to whether these actions were conducted in anger or when they occurred during the marriage. This lack of detail leads us to conclude that Mother's allegations in this case do not equate with those levied against Husband in *Gant.*

■ The only incident which raises any question under *Gant* is Mother's testimony that Father once raised his hand as if to strike her. However, this testimony was expressly refuted by Father during his own testimony. The trial court is free to believe or disbelieve part, all or none of a witness's testimony at trial, even when not contradicted. *Kerr,* 35 S.W.3d at 513. Nevertheless, Mother presented evidence of only one incident. Section 452.375.2(6) clearly contemplates that a "history of abuse" or a "pattern of domestic violence" be present before it is implicated. Therefore, we cannot say that the trial court erred in finding that no history of abuse was presented. Accordingly, Mother's point is denied and the trial court's judgment is affirmed.

SHRUM, P.J., and BARNEY, J., concur.