A.J.K., by his next friend, R.K., and R.K., individually, Respondent/Cross–Appellant,

v.

J.L. Appellant/Cross–Respondent.

No. 73365.

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 22, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 6, 1998.

Application for Transfer Denied Dec. 22, 1998.

Briegel & Baylard, P.C., David L. Baylard, Union, for appellant.

Craig E. Hellmann, Washington, for respondent.

KAROHL, Judge.

Mother appeals modification of child custody decree granting Father joint legal and physical custody of her son, age six, and denial of her post-trial motions to reopen or for a new trial. Father cross-appeals the court's modifications of child support. We affirm as to Mother's appeal. We reverse and remand as to Father's appeal.

R.K. (Father) and J.L. (Mother) had one child, A.J. K., born on January 28, 1991. On June 1, 1993, the court entered a paternity judgment after finding R.K. was the natural father of A.J.K. On January 28, 1994, the court entered a decree that granted Mother primary care, custody, and control of A.J.K., subject to Father's rights of reasonable visitation. The court also awarded Mother $900.00 per month in child support. On August 23, 1995, Father filed a motion to modify the decree, seeking to lower his court-ordered child support obligation. On January 16, 1996, Mother filed a counter-motion to modify, seeking an increase in child support. She also filed a motion to cite and find Father in contempt. On July 12, 1996, Father amended his motion seeking joint custody.

On June 26, 1997, the court entered a judgment of modification with findings of facts and conclusions of law. It found there had been "a substantial and continuing change in the circumstances of both parents and the child since the original decree such that the original decree with respect to child custody, support, and visitation was [then] unreasonable." It concluded "the best interest of the child require[d] a modification," and "the best interest of the child [would] be served by a joint legal custody arrangement." It awarded each parent joint physical custody for alternating periods of two weeks. On the issue of child support, the court rejected the Form 14 child support calculations "submitted by both parties as being incorrect and improper under the findings of the Court." It found the total child support was $763 per month. However, it adjusted the amount to

$613 per month because it found there would be an increased financial burden on Father after the modification of legal and physical custody.

On July 25, 1997, following the modification judgment, Mother filed a motion for new trial, or in the alternative, to reopen the evidence. She filed affidavits in support of her motion. On August 18, 1997, Father filed affidavits in opposition to Mother's motion. On October 3, 1997, she supplemented her motion and filed a motion for appointment of a Guardian Ad Litem. On October 23, 1997, the court denied her motions. She appealed. Father cross-appealed.

■ Rule 73.01(c) and the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) govern our review. In reviewing modifications of a child custody decree, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or it erroneously misapplies the law. *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App.W.D.1996). We give greater deference to the determination of the trial court in child custody matters than in other cases. *Id.* Since the trial court is in the best position to weigh all of the evidence, we affirm its judgment under any reasonable theory supported by the evidence. *Id.* "When there is conflicting evidence, the trial court has the discretion to determine the credibility of witnesses, accepting or rejecting all, part, or none of the testimony it hears." *Id.* We will not overturn the modification of the court unless appellant demonstrates that it was not in the best interest of the child. *In Re Larkins v. Larkins*, 921 S.W.2d 152, 153 (Mo.App.E.D.1996).

Mother raises three points of error. First, she argues the court erred in modifying the parties' prior child custody decree because there was no evidence to support a finding of a change of circumstances of Mother or child that would make a such a modification necessary to serve the best interests of the child pursuant to section 452.410 RSMo Cum. Supp.1996. This section governs the modification of an existing child custody decree, and states in relevant part:

... the court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child....

■ These "changes in circumstances" that the statute requires concern the child or custodial parent, but do not include the changed circumstances of the non-custodial parent. *Nichols v. Ralston*, 929 S.W.2d 302, 305 (Mo.App.S.D.1996). Once the court awards custody, a presumption arises that the custodial parent will continue to be suitable, and therefore, the burden of showing circumstances which would warrant a change of custody is on the moving party. *Guier*, 918 S.W.2d at 947. Courts should not move children "from one environment to another upon slight changes of status" concerning their parents. *Id.* The change in circumstances necessary to support modification of custody must be significant, such that the child will substantially benefit from the transfer of custody. *Senciboy v. Thorpe*, 947 S.W.2d 116, 119 (Mo.App.W.D.1997). The movant also has the burden of proving the modification is necessary to serve the best interests of the child, applying the factors set forth in Section 452.375.2(2) RSMo Cum. Supp. (1996); *Cook v. Warren*, 916 S.W.2d 409, 413 (Mo.App. W.D.1996).

■ At the time of the original child custody, visitation, and support decree, A.J.K. was two years old. He resided with Mother in St. Louis, Missouri. Father resided in Washington, Missouri. After the decree, Mother moved to Owensville, Missouri, and then to St. James, Missouri. A.J.K. continued to reside with Mother at both these locations. In November 1995, Mother married C.P. They had one child, who was ten months old at the time of the hearing on the motions. Sometime in April or May of 1996, she moved to Washington, Missouri where she resided with her new family. Father married after the original decree and has two other children. His family lived in Washington, Missouri at the time of the modification

hearing. Their residence was approximately three miles from Mother's. At the time of the modification hearing, A.J.K. was five years old.

Based partially on these facts, the trial court found:

11. [T]here has been a substantial and continuing change in circumstances of both parents and the child since the original decree such that as the original decree with respect to child custody, support and visitation is unreasonable, for the following reasons, in part:

A. At the time of the original decree of custody both parties were single, the child having been born to them out of wedlock.

B. Since the original decree both parties have married and both have had at least one other child as a result of such marriage.

C. The child is now three years older.

D. At the time of the original decree the parties resided some 75+ miles apart and now reside in the same community. ....

F. Both parties are now better able to provide a stable and normal home atmosphere for child rearing.

G. The best interest of the child requires a modification.

The facts support finding a substantial change in the circumstances of Mother and A.J.K. has occurred and a modification of the original child custody decree is necessary to serve the best interests of the child. Mother argues that Father, as movant, also must prove that the "changed circumstances" has yielded an "adverse impact" on the child, and that such condition is a condition precedent to an order modifying custody. The statute does not require evidence to support a finding that changes had an adverse impact. The issue is best interest of the child. Point denied.

Mother's second point argues the trial court erred in modifying the original custody decree since: (1.) the modification did not contain a proper "joint custody plan" as required by Section 452.375.8 RSMo Cum. Supp.1996; (2.) the evidence supported a finding the parties could not communicate or cooperate with each other; (3.) the modifica-

tion would cause an unhealthy shuttling of a six-year old every two weeks between homes; and (4.) the order confines the child to one school district without consideration of any factors that might justify a move.

■ "Joint legal custody" means that parents are to share in decision-making regarding the important events in their child's life. *J.L.S.* v. *D.K.S.*, 943 S.W.2d 766, 774 (Mo. App.E.D.1997). Joint legal custody "was not designed to insure that a parent maintains his or her relationship with the child, but was designed to facilitate the best interest of the child by allowing both parents to share in the decision-making of raising the child." *Id.*

In the first part of her second point of error, Mother argues the modification did not contain a proper "joint custody plan." Section 452.375.8 RSMo Cum.Supp. (1996) states:

Any decree providing for joint custody shall include a specific written plan setting forth the terms of such custody. Such a plan may be suggested by both parents acting in concert, or one parent acting individually, or if neither of the foregoing occurs, the plan shall be provided by the court. The plan may include a provision for mediation of disputes in all cases, the joint custody plan approved and ordered by the court shall be in the court's discretion.

■ No model custody plan will fit in all situations. *Monsees v. Monsees*, 908 S.W.2d 812, 816 (Mo.App. W.D.1995). Trial courts are to use a case by case approach to determine the best interests of the child and tailor a plan to meet those interests. *Id.*

■ The trial court issued the following joint custody plan:

The parents are obligated to exchange information with one another concerning the health, education, and welfare of the child.

....

Each party shall have physical custody for two week alternating periods, i.e., one party shall have custody from 6:00 P.M. on Sunday for a two week period until 6:00 P.M. on Sunday two weeks hence, and the

other party shall then have custody for a similar two week period and this system of alternating shall continue until and unless modified by the Court. The [Father] shall furnish transportation for the purpose of alternating visitation. Each party shall furnish the transportation to and from school during the periods of custody.

The parties shall alternate custody on the following major holidays and the child's birthday on an annual basis, New Years Day, Good Friday, Easter, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas Eve day, Christmas Day and the child's birthday. The two week alternating custody arrangement shall continue during the summer months. The [Father] shall have custody each year on Father's Day and [Father's] birthday and the [Mother] shall have custody each year on Mother's Day and [Mother's] birthday.

We find the above plan meets the requirements set forth in Section 452.375.8 RSMo Cum.Supp.1996.

■ In the second part of her second point, Mother argues the evidence supported a finding the parties could not communicate or cooperate with each other. "Joint legal custody" is defined by Missouri statute to mean that "... the parents share the decision-making rights, responsibilities, and authority relating to the health, education, and welfare of the child, and, unless allocated, apportioned or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority...." Section 452.375.1(1) RSMo Cum.Supp.1996. "A commonality of beliefs concerning parental decisions and the parties' ability to cooperate and function as a parental unit are important considerations when determining whether joint legal custody is in the best interests of the child." *J.L.S.*, 943 S.W.2d at 774. Therefore, joint legal custody is only appropriate "where the parents show the willingness and ability to share the rights and responsibilities of raising their children." *Id.* However, joint custody "shall not be denied solely for the reason that one parent opposes a joint custody award." Section 452.375.5(1) RSMo Cum. Supp.1996.

■ Father testified: (1) he wanted to play a greater part in A.J.K.'s life; (2) Mother asked Father on more than one occasion to discipline A.J.K.; (3) Mother occasionally asked Father for his advice concerning A.J.K.; (4) he and Mother can communicate regarding A.J.K. and his best interests; and (5) if granted joint legal custody by the court, he could maintain the kind of relationship with Mother needed to share decision making rights with her. Father's wife testified: (1) Father is able to communicate with Mother regarding A.J.K.; (2) her relationship with Mother has been fairly consistent since the court's original custody decree; (3) she never refused to talk to Mother about A.J.K. or his relationship with his Mother; (4) she has never had any problems discussing A.J.K.'s best interests with Mother; (5) she has communicated with Mother on a regular basis regarding A.J.K.; (6) Mother contacts her frequently by phone and the two speak to each other almost every day and the conversations were not hostile; (7) she. never failed or refused to convey any concerns that Mother had about A.J.K. to Father; and (8) Mother sought her advice regarding A.J.K.

The trial court specifically found:

[U]ntil it became apparent that this litigation would be filed, the parties although they were not ordered to do so, shared many of the decision making rights, responsibilities, and authority relating to [A.J.K.'s] health, education, and welfare and conferred with one another in the exercise of decision making rights, responsibilities and authority concerning [A.J.K]. [Mother and Father's wife] also conferred freely and often regarding [A.J.K.], almost daily for quite some time. After this litigation was filed and during its pendency, [Mother] apparently was advised not to confer freely with [Father or Father's wife] and communications became somewhat strained. At trial [Mother] attempted to create the impression that the parties could not cooperate and communicate with one another in a joint legal custody situation. The Court, however, finds to the contrary and finds that [Mother] is opposed to joint legal custody and in an effort to forestall the Court from considering joint legal custody opined that the

parties could not get along. The facts prove otherwise.

The facts support the finding. The trial court did not err in awarding joint legal custody.

In the third and last part of her second point of error, Mother argues the modification has resulted in an unhealthy shuttling of a six-year old every two . weeks between homes. Section 452.375.1(2) RSMo Cum. Supp.1996 defines joint physical custody as:

an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to ensure the child of frequent and continuing contact with both parents.

Our legislature has declared that it is the public policy of Missouri "to assure children frequent and meaningful contact with both parents". Section 452.375.4 RSMo Cum. Supp.1996. Other districts of this court have upheld joint custody arrangements similar to the one in the present case. See *In Re Marriage of Pobst*, 957 S.W.2d 769 (Mo.App. S.D.1997); *Alt v. Alt*, 947 S.W.2d 433 (Mo. App. W.D.1997). The trial court found:

A custody arrangement that maximizes the involvement of both, loving, fit and willing parents is in the best interest of the child. Increasing the access, involvement and periods of custody by [Father] will have a positive impact on the child and the role of [Father] as a father figure will assist the child in regard to developing a healthy attitude regarding authority and discipline. There is nothing in the record that [suggests] increased custody and an increasing role by [Father] in the child's upbringing would be harmful ...

■ "Where parents live apart, there is no way to provide for joint physical custody other than by transferring children from one parent to another at designated times. If there is to be 'frequent and continuing contact with both parents,' as specified in Section 451.375.1(2), transfers are inevitable." *In Re Marriage of Dempster*, 809 S.W.2d 450, 457 (Mo.App.1991). The arrangement is for one child, in a semi-rural area known by the trial court. Although it is unusual, the arrangement is supported by the evidence and the law. Sub-point denied.

In the final part of her second point of error, Mother argues the order confines A.J.K. to one school district without consideration of any factors that might justify a move. The relevant finding has been quoted. It requires discussion on an annual basis and offers a solution to any disagreement so long as the parties continue to live close together.

■ Mother interprets the direction as a restriction on A.J.K.'s schooling to the school he attended at the date of the court's modification. That is not correct. A.J.K., at the time of the court's judgment, attended a school located in Washington, Missouri. The court ordered A.J.K. to attend the Washington school if both parents lived in reasonable proximity to the school. It placed no "geographical restriction" on Mother's family, by the requirement the parents discuss place of schooling and a offered conditional resolution of any disagreement. Either party is free to move outside Washington, Missouri. The only limitation the court placed on the parties was that if they continue to live within 15 miles of Washington, Missouri *and* could not agree as to where A.J.K. should attend school, he would attend the school he attended at the date of the court's modification. The trial court has the "affirmative duty to enter a decree that is in the best interests of the [child]; the best interests of the parents are secondary." *Pobst*, 957 S.W.2d at 773. When parents cannot agree, a trial court has discretion to participate in school selection to protect the best interests of the child. *In re Marriage of Manning*, 871 S.W.2d 108, 111 (Mo.App. S.D.1994). Mother's second point, in all respects, is denied.

■ Mother's third point argues the court erred: (1) in overruling her motion for new trial and to reopen the evidence; and (2) in failing to appoint a Guardian Ad Litem. Mother relies on affidavits she filed with the court after its modification. The affidavits refer to incidents that took place after the court entered its modification judgment. The allegations were never properly before the Court. Post-trial motions are not the appropriate vehicle to present evidence of events that occurred after a judgment to support claims of error in the judgment.

The evidentiary facts support finding the court did not err in denying Mother's post trial motions. Point Denied.

Father's sole point on cross-appeal argues the court erred in requiring him to pay Mother $613 per month in child support. The court made the following findings with respect to child support:

> The Court hereby rejects the Form 14 child support calculations submitted as by both parties as being incorrect and improper under the findings of the Court. The Court has prepared a Form 14 ... according to the Court's finding that [Father's] gross income is $55,000.00 per year and no income being imputed to [Mother].... However, since [Father] will have physical custody one-half of the times, will be providing all necessary transportation for custody transfers, and is providing medical insurance, educational expenses, and all uncovered medical expenses, the Court is going to allow a credit in favor of [Father] of $150.00 per month resulting in a child support payment of $613.00 per month payable by [Father] to [Mother] ...

> Therefore, the Court further finds that [its own Form 14 calculation] is also rejected as being *incorrect and improper* under the circumstances but is used by the Court for the computation of gross income and a Form 14 calculated child support which has been modified by this Court as above stated by the credit allowed [Father].... (Our emphasis).

It is not clear that it intended a finding the Form 14 calculations were unjust or inappropriate. Rule 88.01(e) provides:

> "a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded.... It is sufficient in a particular case to rebut the presumption ... if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all the relevant factors, is unjust or inappropriate."

The provisions of the rule are clear. A deviation from the presumptive Form 14 child support amount requires a specific finding that Form 14 calculations would be unjust or inappropriate. *Monsees,* 908 S.W.2d at 816. An award that differs from the presumptive amount is ineffective without the mandatory finding. *Division of Family Services v. Buttram,* 924 S.W.2d 870 (Mo. App.S.D.1996). "We will not substitute our judgment of that for the trial court on whether or not the presumed child support amount was unjust or inappropriate.... Here, we are unable to discern what the trial court believed on this issue." *Short v. Short,* 947 S.W.2d 67, 69–70 (Mo.App.S.D.1997). "A trial court that deviates from the presumptive amount without the mandatory findings commits error that requires reversal and remand." *Id.* at 69. "Remand is necessary with directions to the trial court to either enter a finding the amount calculated in Form No. 14 is unjust or inappropriate, or to enter an amount of child support dictated by appropriate calculation using Form 14." *Id.*

We affirm in part, and reverse and remand in part with a direction that the trial court reconsider the child support award to Mother. We do not intend to express an opinion on the merits of the child support issue. Costs against appellant.

ROBERT G. DOWD, Jr., C.J. and
ROBERT E. CRIST, Senior Judge, concur.