**Melissa K. LEAZER, Respondent/Cross–Appellant,**

v.

**Timothy E. LEAZER, Appellant/Cross–Respondent.**

**No. ED 81802.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Nov. 4, 2003.

Wallace W. Trosen Jr., Kirksville, MO, for Appellant.

Susan L. Henry, Memphis, MO, for Respondent.

## Introduction

SHERRI B. SULLIVAN, C.J.

Timothy E. Leazer (Father) appeals from a trial court judgment modifying a

decree of dissolution.[1] We affirm in part and remand in part.

### Factual and Procedural Background

In January 1998, the trial court entered a Judgment and Decree of Dissolution (Decree) dissolving the marriage of Father and Melissa K. Leazer (Mother). One child (Child) was born of the marriage on January 12, 1995. The Decree provided for joint legal custody of Child and primary physical custody of Child with Mother, subject to reasonable rights of visitation with Father. The Decree ordered Father to pay to Mother $210 per month for child support.

In October 2001, Father filed a motion to modify the Decree as to child custody, visitation, and support,[2] in which he requested sole physical custody of Child, subject to visitation with Mother. In December 2001, Mother also filed a motion to modify the Decree as to child custody, visitation, and support, in which she requested sole legal custody of Child. A three-day trial was held on the parties' motions. In August 2002, the trial court entered an Order and Judgment of Modification (Judgment) modifying the Decree.

In its Judgment, the trial court found a substantial change in circumstances with regard to Child and Mother that mandated a modification of the Decree in order to provide for the best interests and welfare of Child. Accordingly, the Judgment provided for sole legal and physical custody of Child with Mother, subject to reasonable rights of visitation with Father.[3] The Judgment ordered Father to pay to Mother $417 per month for child support.

### Standard of Review

▮▮▮ Our review of a judgment modifying child custody is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. In making our determination, we view the evidence and the reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Id.* When there is conflicting evidence, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony of the witnesses. *A.J.K. by R.K. v. J.L.*, 980 S.W.2d 81, 84 (Mo.App. E.D.1998). We defer to the trial court's superior ability to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in the transcript. *Bohac v. Akbani*, 29 S.W.3d 407, 411 (Mo. App. E.D.2000). We give greater deference to the trial court in custody matters than in other matters. *Id.* Because the trial court is in the best position to weigh all of the evidence, we will affirm the trial court's custody determination under any reasonable theory. *Id.*

### Discussion

Father raises two points on appeal. In his first point, Father argues that the trial

---

1. Mother also filed a notice of appeal, and we consolidated the appeals under ED81802. However, in her brief, Mother raised no claim of error as to the trial court's judgment. Thus, her appeal is deemed abandoned. *Gross v. Helm*, 98 S.W.3d 85, 89 (Mo.App. E.D.2003). Mother's cross-appeal (ED81860) is dismissed.

2. Father filed a first amended motion to modify in February 2002.

3. In making this determination, the trial court considered the parties inability to communicate with one another and to share decision making responsibilities regarding Child's welfare.

court erred in not transferring sole legal and physical custody of Child to Father.

The standard governing the modification of a custody decree is set forth in Section 452.410.1,[4] which provides in relevant part:

> [T]he court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

The change in circumstances must be substantial. *Searcy v. Seedorff*, 8 S.W.3d 113, 117 (Mo. banc 1999).

■ In its Judgment, the trial court found a substantial change in circumstances with regard to Child and Mother. The record supports this finding, and Father does not argue that the trial court erred in making such a finding.[5] Rather, Father argues that the trial court erred "by not finding that a change of physical custody was in the best interests of [Child]."

■ In addition to finding a substantial change in circumstances, Section 452.410.1 requires a finding that modification of custody is necessary to serve the best interests of the child. There is no fixed test for determining the best interests of the child when modifying a child custody decree. *Bohac*, 29 S.W.3d at 412. Unlike Section 452.375.2,[6] which sets forth a nonexclusive list of factors to be considered in making an initial custody determination, Section 452.410.1 sets forth the more general standard that modification serve the best interests of the child. *Id.* However, we consider the factors set out in Section 452.375.2 for guidance in determining the best interests of the child,[7] and

---

4. All statutory references are to RSMo. (2000), unless otherwise indicated.

5. Actually, both Father and Mother state in their briefs that the trial court did not specifically or expressly find a substantial change in circumstances; however, a close examination of the trial court's judgment reveals that the trial court did make such a finding at the top of the second page. Both parties also argue that a substantial change in circumstances of Child and Mother had occurred since the Decree.

6. Section 452.375.2 provides in relevant part:

   The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
   (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
   (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

   (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
   (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
   (5) The child's adjustment to the child's home, school, and community;
   (6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....;
   (7) The intention of either parent to relocate the principal residence of the child; and
   (8) The wishes of a child as to the child's custodian.

7. We realize that some decisions from our court have not specifically considered the factors set out in Section 452.375.2 to determine the best interests of the child, *see Maher v. Maher*, 951 S.W.2d 669, 673 (Mo.App. E.D. 1997); *Bohac*, 29 S.W.3d at 412, whereas other decisions have done so, *see A.J.K. by R.K.*, 980 S.W.2d at 84; *see also Love v. Love*, 75 S.W.3d 747, 762–763 (Mo.App. W.D.2002).

the Judgment suggests that the trial court considered the factors as well. Also, information of the noncustodial parent's lifestyle and suitability of his or her environment for a child is relevant in determining the best interests of the child. *Searcy*, 8 S.W.3d at 117.

The trial court prepared a detailed judgment. In its Judgment, the trial court made the following findings. The trial court recognized the need of Child to have a frequent, continuing and meaningful relationship with both parents. However, although both parents possess the ability and express the willingness to actively perform their functions as a mother and a father for the needs of Child, their actions indicate otherwise, as each party apparently enjoys frustrating and manipulating the time that the other party spends with Child.[8]

Child interacts well and has a relatively good relationship with both parents. Child also enjoys a good relationship with Mother's two children from a previous marriage. While Child is at Mother's residence, Child's sixteen-year-old half-sister provides many of the caregiver duties for Child.

Child appears to have adjusted well to her current home with Mother.[9] Child's performance in school has slowly im-proved. Neither parent expressed any intentions of relocating their residences.[10]

Both parents appear to be in good physical health. However, Father has a history of mental health issues, including several bouts with depression and suicidal thoughts.[11] Father also is a self-described recovering alcoholic, although the testimony from other witnesses brought the extent of his recovery from alcohol abuse into question.

Child stated that she wished to remain with Mother; however, because of Child's age and the extent of manipulation by both parents, Child's stated desire had little effect on the trial court's ruling.

Regarding Father's lifestyle and suitability of his environment for Child, the trial court found the following. Father's mental health issues have directly affected his contact and conduct with Child. When Father has temporary custody of Child, they spend time at a "cabin," apparently a shed built inside a barn without bathroom facilities in a rural area owned by Father. Father did not refute allegations concerning his bathing with Child and rubbing lotion over her entire body. Father makes frequent visits to cemeteries with Child and appears somewhat preoccupied with the idea of death and dying.

Father lives in the home of his girlfriend, who testified that the strength and

---

8. We note that the trial court was critical of both parties in this respect: "Their concern for the well being of their daughter ranks well below their zeal for manipulation of the other parent. The fitness and suitability of both parents as it relates to the ability to parent their child is questionable. Serious consideration would have to be given to an award of third-party custody, pursuant to Section 452.375.5(2)(a) RSMo, if that alternative were available in this case. At the present time, this option is not available to the Court. Perhaps, should the attitude and actions of the parties continue on its present course, further

exploration of this alternative will be mandated."

9. Mother has relocated five times since the Decree, which the trial court noted was not beneficial to Child.

10. The trial court questioned Mother's sincerity of this intention in light of her history of frequent residence changes. However, Mother has executed a 30-year mortgage on her present home.

11. At the time of trial, Father was taking antidepressant medication.

stability of their relationship is predicated on Father's continued abstinence from alcohol. Should the relationship end, Father is left with residing in the "cabin" with no responsible person available to assist in providing the necessary care for Child.

On the other hand, Mother's residence provides adequate living arrangements. Because of Mother's work schedule and educational endeavors,[12] Child's half-sister is the primary caregiver for Child.[13] A strong bond exists between the two girls. At least for the immediately foreseeable future, Child's half-sister will remain a part of Child's life and will be available to serve as a surrogate mother for Child.

■ Viewing the evidence in the light most favorable to the judgment, the record supports the trial court's findings. We note that once custody has been originally adjudicated, there is a presumption that the parent with custody remains suitable. *A.J.K. by R.K.*, 980 S.W.2d at 84. We also reiterate that we give great deference to the trial court in custody matters, and we do so here. Therefore, we find that the trial court did not err in not transferring sole legal and physical custody of Child to Father. Accordingly, Father's point one on appeal is denied.

■ In his second point on appeal, Father argues that the trial court erred in failing to include a child care providers selection procedure and a dispute resolution procedure in its parenting plan as required by Section 452.310.7.[14]

Section 452.375.9 requires any judgment providing for child custody to include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in Section 452.310.7. Section 452.310.7 sets out the arrangements that must be included in every parenting plan, including:

(2) A specific written plan regarding legal custody which details how the decision-making rights and responsibilities will be shared between the parties including the following:

. . .

(d) Child care providers, including how such providers will be selected;

. . .

(f) A dispute resolution procedure for those matters on which the parties disagree or in interpreting the parenting plan;

. . . .

In its Judgment, the trial court did not adopt a parenting plan submitted by either party, but rather the court incorporated into the Judgment its own parenting plan to be followed by the parties. A review of the Judgment reveals that the trial court's parenting plan fails to provide for the issues required by Section 452.310.7(2)(d) and (f). As such, the trial court's Judgment is not in compliance with Sections 452.375.9 and 452.310.7.

Accordingly, we remand to the trial court with instructions to modify its Judgment to include a parenting plan in compliance with Section 452.310.7. *See Hollins v. Hollins*, 13 S.W.3d 669, 673–674 (Mo. App. E.D.2000). Father's point two on appeal is granted.

---

12. At the time of trial, Mother's work schedule required her to leave her home at about 9:20 p.m. and return home at about 8:20 a.m. Mother also was taking college classes and was expected to graduate with a paralegal certificate in May 2003.

13. The trial court described Child's half-sister as "a very bright young lady who appears to readily accept the parenting responsibilities thrust upon her by [Mother]."

14. We note that Mother does not respond to this point in her brief.

*Conclusion*

We remand to the trial court with instructions to modify its Judgment to include a parenting plan in compliance with Section 452.310.7. In all other respects, the Judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, J., and MARY R. RUSSELL, J., concur.