Christian Gerhardt REISINGER, Appellant/Cross–Respondent,

v.

Guadalupe REISINGER, Respondent/Cross– Appellant.

Nos. ED 82009, ED 82299.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 20, 2004.

Jane E. Tomich, St. Charles, MO, for appellant.

Anthony B. Ramirez, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

Christian Gerhardt Reisinger (Father) appeals the judgment dissolving the parties' marriage and awarding joint legal and physical custody of the parties' minor child (Child) to both him and Guadalupe Reisinger (Mother), but ordering that Child's primary residence be with Mother who resides in New Mexico. Father presents two points on appeal challenging the trial court's custody determination. Mother presents a single point on cross-appeal. However, we shall address Mother's cross-appeal first because it questions whether the trial court had jurisdiction to determine the custody issue. We affirm.

## Factual and Procedural History re: Jurisdiction

In August, 1998, Father and Mother were married in New Mexico. One week thereafter, they returned to reside in Missouri. The parties had a troubled marriage almost from the outset. In April, 1999, Mother left Missouri for New Mexico and remained there. On May 6, 1999, Father filed a petition for dissolution of his marriage to Mother in a Missouri court. (Reisinger I).[1] On May 29, 1999, Mother gave birth to Child in New Mexico. In August, 1999, the court granted Father temporary custody and visitation of Child on the third weekend of every month. On October 21, 1999, Mother was found in contempt for the third time for failing to comply with this order. On November 4, 1999, the Missouri court ordered Mother to appear in court with Child on November 19, 1999 to transfer primary legal and physical custody of Child to Father. The court ordered that if Mother did not appear, or appeared without Child, a warrant of commitment would be issued for her imprisonment. Mother complied and returned to Missouri with Child on November 19, 1999. On that date the court allowed Mother to retain custody of Child as long as she resided in St. Charles and allowed Father visitation. Mother and Child resided here until March 14, 2001. On January 10, 2000, the court dissolved the marriage of Father and Mother and awarded primary legal and physical custody of Child to Father.

Following an appeal filed by Mother, this Court reversed the judgment and remanded the cause with instructions to dismiss for lack of personal jurisdiction, due to insufficient service of process. See

Reisinger v. Reisinger, 39 S.W.3d 80 (Mo. App.E.D.2001).

On March 14, 2001, the trial court dismissed Reisinger I. On that same day, Father filed a second petition for dissolution of marriage seeking primary custody of Child in Missouri. (Reisinger II). Also on that same day, Mother left Missouri, but was later served with process in Reisinger II in New Mexico. Father filed a motion in Reisinger II for determination of appropriate forum under the Uniform Child Custody Jurisdiction Act (UCCJA.)[2] The trial court found that Child's "home state" was Missouri and that it therefore had jurisdiction to adjudicate the custody of Child.

On May 2nd and 3rd, 2002, both parties appeared with counsel for trial of Reisinger II. On September 26, 2002, the trial court entered its judgment dissolving the parties' marriage and awarding joint legal and physical custody to Father and Mother, but ordering that Child's primary residence be with Mother who resides in New Mexico.

## Mother's Cross-appeal

■ Mother maintains that the trial court lacked jurisdiction to make a child-custody determination because Missouri was not the proper state under the UCCJA, because the parties were restored to their original positions following the reversal of the Reisinger I judgment, and because Father was guilty of reprehensible conduct.

Mother argues that under the UCCJA, the Missouri court did not have jurisdiction to make a child-custody determination. We disagree. Under the UCCJA, the trial court had jurisdiction to make the

---

1. Mother's motion to take judicial notice of the proceedings in Reisinger I is granted.

2. Missouri's statutory adoption of the UCCJA is set forth in Section 452.440–452.550. All statutory references are to RSMo (2000).

custody determination if: (1) Missouri is or was Child's "home state" within last six months, (2) it is in the best interest of Child because both evidence and "significant connection" are in Missouri, (3) Child is physically present in Missouri and has been either abandoned or faces an emergency, or (4) no other state has jurisdiction. Section 452.450. See also *Haydon v. Darrough*, 961 S.W.2d 940, 942 (Mo.App. E.D.1998). Here, Missouri qualifies as Child's "home state," thereby vesting the Missouri court with jurisdiction. Section 452.445(4) defines "home state" as:

> [T]he state in which, immediately preceding the filing of custody proceeding, the child lived with his parents, a parent, an institution; or a person acting as parent, for at least six consecutive months; or, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned....

Here, Mother, Father and Child had all been residing in Missouri continuously from November 19, 1999 to March 14, 2001, when Father filed the instant custody proceeding, Reisinger II. Thus, in accord with the statute, Child had been with a parent in Missouri for 15 months immediately preceding the filing of the current custody proceeding. Under the UCCJA, this circumstance in and of itself qualified Missouri as Child's "home state" and vested jurisdiction in the trial court to determine Child's custody. Sections 452.445(4) and 452.450.

■ Mother urges that we should ignore Child's presence in Missouri for this extended period preceding the filing of Reisinger II. Mother reasons that because the reversal of the Reisinger I judgment operated to restore the parties' legal status they possessed before the Reisinger I petition was filed, it likewise operated to somehow eliminate Child's presence in Missouri since such presence was itself attributable to a court order entered in Reisinger I. Thus, Mother believes that we should analyze the jurisdictional issue solely from the vantage point that existed prior to the filing of Reisinger I. This is not a belief we share. The reversal of the judgment in Reisinger I did not operate to somehow eliminate Child's real presence in Missouri. As a matter of fact, Child did reside with a parent in Missouri for some fifteen consecutive months preceding the filing of Reisinger II. As Justice Brandeis observed, "... the logic of words should yield to the logic of realities." *Di Santo v. Pennsylvania*, 273 U.S. 34, 43, 47 S.Ct. 267, 71 L.Ed. 524 (1927). The superior position of a Missouri court to adjudicate the custody of a recently resident child is in no way diminished merely because such child's residence was ordered by a court that lacked jurisdiction over the parties. We should not confuse the legal consequences of the reversal of Reisinger I with the attendant facts that may rightly aid a Missouri court in determining what custody determination is in Child's best interest. And, as may be properly concluded from both the trial court's judgment and this appeal, Mother has no grounds to suspect any hostility by Missouri courts to her interests or those of Child. Under the UCCJA, Missouri is Child's "home state," and the trial court had jurisdiction to make a child-custody determination.

■ Mother further argues that, under the "clean hands" doctrine, Missouri courts should foreswear any claim to jurisdiction because of Father's reprehensible conduct in prosecuting Reisinger I when she had never been properly served. The record on appeal in this matter includes all proceedings from both Reisinger I and II. Our review of the record discloses no reprehensible conduct by Father. Father attempted to serve Mother at her St. Charles

address in Reisinger I, having no knowledge of where else she might be served. Upon being contacted by telephone by a special process server, Mother, who was in New Mexico with her mother, told the process server to leave the summons at the St. Charles address, and she would pick it up. Such attempted service was legally insufficient. However, there is no evidence in this case that Father's attempted service upon Mother was dishonest or fraudulent. Point denied.

### Appeal

■ Because Father's claims on appeal both challenge the child court's custody determination, we shall consider them together. Essentially, Father maintains that the trial court erred in (1) ordering that Child's primary residence shall be with Mother, and (2) awarding joint legal custody to Father and Mother.

We will affirm the trial court's custody determination unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Besancenez v. Rogers*, 100 S.W.3d 118, 122 (Mo.App. E.D. 2003). The trial court possesses broad discretion in child-custody matters, and its decision will only be reversed if we are firmly convinced the welfare and best interests of the child require otherwise. *Id.*

Section 452.375.2 instructs the trial judge to determine custody in the best interests of the child, considering all relevant factors, including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as Mother and Father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved . . .;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Father acknowledges that consideration of most of these factors do not buttress his claim that the court wrongly ordered that Child's primary residence shall be with Mother. He concedes that factors 1, 3, 5, 6, 7, and 8 are neutral, but argues that factors 2 and 4 weigh in his favor. As to the second factor, he agrees that Mother has responsibly functioned as primary custodian, but instead criticizes her deficiencies in meeting Child's needs for frequent, continuing and meaningful contact with Father. Also, as to the fourth factor, he accuses Mother of unwillingness to allow such contact.

However, the trial court found that each parent has allowed Child meaningful contact with the other and neither parent is more likely than the other to either allow or disallow such contact. The trial court further found that there is no reason to believe that Mother would disobey court orders related to visitation and custody by Father.

The trial court made extensive findings in support of its judgment. Mother fol-

lowed court orders for visitation and custody to the best of her ability and complied with the orders by bringing Child to Missouri in September 1999 and by making visitation available to Father in November 1999 and December 1999. Mother had a good-faith reason for not bringing Child to Missouri in August 1999. When Father had primary legal and physical custody of Child, Mother visited Child frequently to breast-feed Child. During this time period Mother exercised her temporary custody and visitation without interference by Father. After Mother returned to New Mexico and when no visitation and custody order was in force, she made Child reasonably available by allowing in-person custody and by making phone calls to Father so that he could speak with Child. Specifically, Mother called Father on five occasions so that Father and Child could talk with each other, and Father visited with Child in New Mexico on four occasions. Mother wrote to Father to report on the treatment of Child's clubfoot. We hold these instances constitute substantial evidence in support the trial court's finding as to the second and fourth factors of Section 452.375.2, that both Father and Mother have allowed Child frequent, continuing and meaningful contact with the other and that neither parent is more likely than the other to allow or interfere with such contact.

■ In spite of these examples, Father points to numerous incidents of Mother's bad behavior and obstruction of his visitation and communication with Child. However, most of these accounts derive from Father's own testimony, which may not have been believed by the trial court. We shall not second-guess a trial judge's determination regarding credibility since he or she evaluates credibility when the evidence conflicts. *Besancenez*, 100 S.W.3d at 126. The trial court may accept or reject none, all, or any portion of the testimony. *Id.* We accept as true the evidence and permissible inferences favoring the prevailing party, and we disregard evidence and inferences contradicting the trial court's conclusion. *Id.* Furthermore, a trial court's decision in a child-custody matter receives greater deference than in other types of cases. *Id.* Although we recognize that there were certain instances where Mother's conduct was clearly obstructionist of meaningful contact between Father and Child, we nevertheless find the trial court's decision to be supported by substantial evidence. Point denied.

■ This same reasoning supports our rejection of Father's second point concerning the trial court's allegedly mistaken award of joint legal custody to the parties. Joint legal custody means that the parents are to share in the decision-making regarding the important events in their child's life. *A.J.K. v. J.L.*, 980 S.W.2d 81, 85 (Mo.App. E.D.1998). Joint legal custody was not designed to insure that a parent maintains his or her relationship with the child, but is aimed at promoting the best interest of the child by allowing both parents to share in the decision-making of raising the child. *Id.* A commonality of beliefs concerning parental decisions and the parties' ability to cooperate and function as a parental unit are important considerations when determining whether joint legal custody is in the best interests of the child. *A.J.K. v. J.L.*, 980 S.W.2d at 86. Joint legal custody is only appropriate where the parents show a willingness and ability to share the rights and responsibilities of raising the children. *Id.*

■ Again, the trial court's findings set forth above amply demonstrate that Father and Mother have shown a willingness and ability to share the rights and responsibilities of raising Child. Here too, Father relies chiefly on his own testimony

to support his assertion that Mother demonstrated that she was unwilling to discuss any issues concerning Child with Father. We find this assertion overbroad, inaccurate, and adequately refuted by the trial court's findings. The trial court noted Mother's letters and phone calls to Father regarding Child's needs, care and welfare, including Child's foot surgery and progress thereafter, and making Child available to Father as well as visiting Child when Mother did not have custody to breast-feed him. Furthermore, an award of joint custody is not meant to reward or punish either party, but is favored when it is in the best interests of the child. *Margolin v. Margolin*, 796 S.W.2d 38, 49 (Mo.App. W.D.1990). Here, we find no abuse of the trial court's broad discretion. Point denied.

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J., and WILLIAM H. CRANDALL, J., concur.